UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOSE RODRIGUEZ,<br><br>            Plaintiff,<br><br>    v.<br><br>M. HUBBARD-PICKETT, *et al.*,<br><br>            Defendants. | Case No. 2:19-cv-01644-KJD-NJK<br><br>ORDER |

Presently before the Court is Defendant Monique Hubbard-Pickett's Motion to Dismiss (#26) and Motion for Summary Judgement (#36). Though the time for doing so has passed, Plaintiff has failed to file any response to Defendant's dispositive motions.

I. Background and Procedural History

Pursuant to this Court's August 2020 Screening Order (#9), Rodriguez was allowed to proceed on the following claim:

> • An Eighth Amendment deliberate indifference to serious medical needs claim, against Defendants Associate Warden Hubbard-Pickett and Doe doctor when Plaintiff learns his identity.

On March 8, 2021, the Office of the Attorney General (OAG) accepted service on behalf of Associate Warden Hubbard-Pickett. Defendant Hubbard-Pickett ("Defendant") then filed the present motions. Defendant seeks to dismiss the claim for the following reasons: first, Plaintiff failed to exhaust his administrative remedies; second, Defendant did not personally participate in any alleged constitutional violation; and third, Defendant is protected by qualified immunity under the facts established in this action.[1]

---

[1] Because the Court finds summary judgment should be granted for Defendant on the remaining claim based on Plaintiff's failure to exhaust his administrative remedies and because Plaintiff failed to raise any issues of fact that

II. Legal Standard

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment may be granted if the pleadings, depositions, affidavits, and other materials in the record show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material if it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Uncorroborated and self-serving testimony, without more, will not create a genuine issue of material fact. See Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Conclusory or speculative testimony is also insufficient to raise a genuine issue of fact. Anheuser Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. Once that burden is met, the nonmoving party then has the burden of setting forth specific facts demonstrating that a genuine issue exists. See Matsushita, 475 U.S. at 587; Fed. R. Civ. P. 56(e). If the nonmoving party fails to make a sufficient showing of an essential element for which it bears the burden of proof, the moving party is entitled to summary judgment. See Celotex, 477 U.S. at 322-23.

III. Facts

On or about, April 21, 2019, Rodriguez submitted an informal grievance: 2006-30-82162. See Defendant's Moton for Summary Judgment, Doc. No. 36, Exhibit B (Grievances). In the informal grievance, Rodriguez claimed that for seven years he took blood thinners for his legs. Id. at 6-9. He claimed that he took "Serelto" prior to arriving at HDSP. Id. Rodriguez claimed that he was seen by a member of HDSP's medical staff and discussed his medication. He claimed that when a Nurse visited him, he was told that his medication would be delivered within a day. Id. Rodriguez went on to claim that he was seen by HDSP medical staff "every

---

would demonstrate Defendant's personal participation in a violation of Plaintiff's constitutional rights, the Court declines to address qualified immunity.

single day" since he arrived at HDSP. Id.

Rodriguez claimed that the HDSP medical staff did not deliver him his requested medication. Id. In the informal grievance, Rodriguez went on to claim that his need for blood thinners could be a life-threatening issue. Id. Rodriguez requested to have someone "look into" his alleged issue. Id.

Hubbard-Pickett acting as the grievance coordinator responded to Rodriguez's informal grievance. Id. Hubbard-Pickett, who is not a trained medical provider, rejected Rodriguez's informal grievance. Hubbard-Pickett informed Rodriguez that his grievance would not proceed to the next level per Administrative Regulation (AR) 740 because Rodriguez failed to properly address his request with HDSP medical staff by way of a medical request form (commonly referred to as a medical kite). Id. Hubbard-Pickett is not a member of the HDSP medical staff and is not capable of rendering medical decisions or medical judgment. Thus, she properly directed Rodriguez to file a medical kite with the medical department for assistance. Id. Rodriguez did not re-submit this grievance or appeal the grievance to any higher level in the administrative remedy process. Id.

On or about May 28, 2019, Rodriguez submitted informal grievance 2006-30-83768, Id. at 1-5. In this new informal grievance, Rodriguez claimed that he took blood thinners for six years, which he claimed was "Serelto." Id. Rodriguez again acknowledged that HDSP medical staff provided him with daily medical attention. Id. Rodriguez also acknowledged that he was given "Cumadin." Id.[2] However, in this informal grievance, Rodriguez demanded "Serelto" because he did not want "Cumadin." Id. Rodriguez also demanded that he be given $1,500.00 for each day he took "Cumadin." Id.

Again, Hubbard-Pickett acted as the grievance coordinator and responded to Rodriguez's informal grievance. Id. Hubbard-Pickett rejected Rodriguez's new informal grievance. Id. Hubbard Pickett informed Rodriguez that grievance 2006-30-83768 was deemed to be an abuse

---

[2] Coumadin® is a brand name for the medication Warfarin. Coumadin is used to prevent or treat blood clots, including deep venous thrombosis or pulmonary embolism. It is also used for blood clots that may be caused by certain heart conditions, open-heart surgery, or after a heart attack. Warfarin is an anticoagulant (blood thinner) that decreases the clotting ability of the blood. Because Rodriguez spelled Coumadin as Cumadin, for the purpose of this order, "Cumadin" will be used.

- 3 -

of the inmate grievance procedures because it was a duplicate of informal grievance 2006-30-82162. Id. Hubbard-Pickett reminded Rodriguez that he filed informal grievance 2006-30-82162 a month earlier regarding the request for the "Serelto" medication. Id. As informal grievance 2006-30-82162 was the active and operative grievance, Hubbard-Pickett informed Rodriguez that grievance 2006-30-83768 would not proceed to the next level per Administrative Regulation 740. Id. Rodriguez did not re-submit this grievance or appeal the grievance to any higher level in the administrative remedy process. Id. Nor did Rodriguez re-submit informal grievance 2006-30-82162. See Id. Rodriguez filed the present Complaint on August 24, 2020.

IV. Analysis

    A. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e (a). Exhaustion of administrative remedies requires an inmate to use "all steps the agency holds out and doing so properly." Woodford v. Ngo, 548 U.S. 81, 90 (2006). Exhaustion protects an administrative agency's authority; it "gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into [. . .] court,' and it discourages 'disregard of [the agency's] procedures.'" Id. at 89 (quoting McCarthy v. Madigan, 503 U.S. 140, 145 (1992)). The PLRA's administrative exhaustion requirement also promotes judicial economy by "'reduc[ing] the quantity and improv[ing] the quality of prisoner suits.'" Id. at 93 (quoting Porter v. Nussle, 534 U.S. 516, 524 (2002)).

The Supreme Court has strictly construed the mandatory exhaustion provision of the PLRA. Booth v. C.O. Churner, 532 U.S. 731, 741 n.6 (2001) ("We will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). The Ninth Circuit has clarified that § 1997e (a) requires the complete exhaustion of administrative remedies before a civil complaint is filed. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). "Exhaustion subsequent to the filing of suit will not suffice." Id. (citing

Booth, 532 U.S. at 738).

The Supreme Court provided its most definitive statements regarding the requirement of proper exhaustion in Ross v. Blake, 136 S. Ct. 1850 (2016). Ross clarified that the "statutory exhaustion provisions" in the PLRA foreclose judicial discretion. Id. at 1853. Expanding on the lack of judicial discretion, the Court explained:

> The PLRA speaks in unambiguous terms, providing "[n]o action shall be brought" absent exhaustion of available remedies. Aside from one significant qualifier—that the administrative remedies must indeed be "available"—the test suggests no limits on an inmate's obligation to exhaust. That mandatory language means a court may not excuse a failure to exhaust, even to take "special circumstances" into account.

Id. The Court noted that the lack of judicial discretion is so total that courts cannot excuse the exhaustion requirement even in circumstances where "a prisoner makes a reasonable mistake about the meaning of a prison's grievance procedures." Id.

The one area in which proper exhaustion may be excused, unavailability, the Court set forth three "circumstances in which an administrative remedy, although official on the books, is not capable of use to obtain relief." Id. Those circumstances exist when the administrative remedies are (1) a "dead end" because the administration is either unable or "consistently unwilling" to provide relief to the inmate, (2) "so opaque" that "no ordinary prisoner can navigate the system," and (3) thwarted by the actions of prison administrators. Id. at 1853-54. None of these exceptions are present in this case.

If an inmate disagrees with the NDOC's response to the informal grievance, the inmate must file an appeal within five (5) days of the date that the inmate receives the response. AR 740.08(12) (A). Such an appeal is a first level grievance. AR 740.09. If an inmate disagrees with the NDOC's response to the first level grievance, the inmate must file an appeal within five (5) days of the date that the inmate receives the response to the first level grievance. AR 740.09(5) (A). Such an appeal is a second level grievance. AR 740.10. The second level grievance is the final grievance that an inmate may file, unless the inmate has alleged sexual abuse. AR 740.10(1) (G)). The prison administrator's decision will be returned to the Grievance Coordinator to be

given to the inmate. AR 740.10(4).

Here, Rodriguez filed two informal grievances partially addressing the allegations contained in the complaint. Rodriguez never completed the informal level of the grievance process with respect to each grievance. Id. Rodriguez did not exhaust a grievance against Hubbard-Pickett. Further, Plaintiff failed to follow the appropriate procedure, filing a medical kite, as instructed by Defendant. Since Rodriguez failed to exhaust the NDOC's available administrative remedies prior to filing this action, the Court grants Defendant's motion for summary judgment on Plaintiff's surviving claim against her.

### B. Failure to Participate in a Violation of Plaintiff's Constitutional Rights

To establish an Eighth Amendment claim against prison officials for medical treatment, a Plaintiff must show deliberate indifference to a serious medical need. Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The Ninth Circuit has established a two-part test for deliberate indifference: first, Plaintiff must establish a serious medical need, meaning that failure to treat the condition could result in "significant injury or the unnecessary and wanton infliction of pain." Id. (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)). Second, Plaintiff must demonstrate the Defendant's deliberate indifference to the need, meaning that the prison official "knows of and disregards an excessive risk to inmate health." Id. Defendant's indifference to or interference with the plaintiff's medical care must be intentional; negligence will not suffice to state a deliberate indifference claim. Jett, 439 F.3d at 1096.

Further, liability under section 1983 arises only upon personal participation by the defendant. Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979). A government official—whether subordinate or supervisor—may be held liable under section 1983 only when his or her own actions have caused a constitutional deprivation. OSU Student Alliance v. Ray, 699 F.3d 1053, 1069 (9th Cir. 2012) ("[E]ach government official, his or her title notwithstanding, is only liable for his or her own misconduct."); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant").

An individual government defendant "causes" a constitutional deprivation when he or she (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he [or she] is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury." Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978); see also Lacey v. Maricopa County, 693 F.3d 896, 915 (9th Cir. 2012) (en banc). Allegations regarding causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

When the personal participation of a prison administrator in a medical matter is at issue, an administrator defendant is not liable for "simply signing off" on an administrative response. Peralta v. Dillard, 744 F.3d 1076, 1086 (9th Cir. 2014). A prison official is deliberately indifferent when they know of and disregard an excessive risk to an inmate's health. Toguchi v. Chung, 391 F.3d 1051, 1057-58 (9th Cir. 2004). The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or should have known would cause others to inflict a constitutional injury." Starr v. Baca, 652 F.3d 1202, 1207-08 (9th Cir. 2011).

Plaintiff must demonstrate that the prison administrator possessed independent awareness of the Plaintiff's medical condition through a review of the Plaintiff's medical chart or a personal investigation into the Plaintiff's medical complaint. See Ibrahim v. Facility Health Admin., No. CV1804942PHXMTLJFM, 2020 WL 6363728, at *5 (D. Ariz. Oct. 29, 2020) citing Peralta, 744 F.3d at 1086; see also Colwell v. Bannister, 763 F.3d 1060, 1069 (9th Cir. 2014) (denying summary judgment where prison officials "ignored the recommendations of treating specialists and instead relied on the opinions of non-specialist and non-treating medical officials who made decisions based on an administrative policy"); Snow v. McDaniel, 681 F.3d 978, 988 (9th Cir. 2012) (where the treating physician and specialist recommended surgery, a reasonable jury could conclude that it was medically unacceptable for the non-treating, non-specialist physicians to deny recommendations for surgery) (*overruled in part on other grounds* by Peralta, 744 F.3d at

1083).

In this case, Rodriguez's Eighth Amendment claim must be dismissed because the admissible evidence demonstrates that Hubbard-Pickett did not personally participate in Rodriguez's medical care when responding to either grievance.

**1. Informal Grievance 2006-30-82162**

Rodriguez submitted informal grievance 2006-30-82162, which dealt with his demand for "Serelto." Exhibit B. In his grievance Rodriguez conceded that that he was seen by a member of HDSP's medical staff and discussed medication. Id. at 6-9. Not only did Rodriguez claim that he already received medical care and that the medical department was addressing the "Serelto" request, but Rodriguez also admitted that was seen by HDSP medical staff "every single day" since he arrived at HDSP. Id.

Rodriguez's admission is significant because it establishes what a reasonable person in Hubbard-Pickett's position could infer. Hubbard-Pickett is not medically trained. She cannot render medical judgment or make a medical decision. She is not a member of the HDSP medical staff. Therefore, her role in this matter was limited to that of a prison administrator responding to a grievance.

A review of Rodriguez's demand shows that it could only be resolved by the HDSP medical staff. Rodriguez admitted that the medical staff was already addressing his medical request. Not only did Rodriguez inform Hubbard-Pickett that HDSP medical staff was addressing the "Serelto" request, but Rodriguez also informed Hubbard-Pickett that Rodriguez was receiving daily medical attention. Hubbard-Pickett directed Rodriguez to address his concerns with the medical department through a medical kite.

Indeed, Rodriguez admits that within nine (9) days of filing his grievance he was provided with "Cumadin" by the medical staff that treated him daily. Notably, Rodriguez never claimed that he told the physician that he was injured by any delay. See Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (holding that when a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury).

**2. Informal Grievance 2006-30-83768**

Rodriguez also submitted informal grievance 2006-30-83768. Exhibit B at 1-5. Like before, this grievance dealt with Rodriguez's request for "Serelto." Because 2006-30-83768 substantially dealt with the same issue as 2006-30-82162, Hubbard-Pickett rejected it as a duplicate grievance. She then reminded Rodriguez that he filed informal grievance 2006-30-82162, which was still active and operative.

As before, Rodriguez sought relief that Hubbard-Pickett could not provide. To resolve a disagreement between him and his doctor, Rodriguez needed to work with his doctor. See Estelle v. Gamble, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); see also Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) (a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference).

The admissible evidence demonstrates two things: Rodriguez received constant medical attention from HDSP medical staff, and Hubbard-Pickett did not personally participate in Rodriguez's medical care. Hubbard-Pickett did not review Rodriguez's medical file because she is not a HDSP medical staff member. Hubbard-Pickett was not aware of any physician's order applicable to Rodriguez's blood thinner medication. Hubbard-Pickett did not disregard or ignore a physician's order about blood thinner medication. Hubbard-Pickett was not involved in the decision to deny any alleged treatment to Rodriguez, nor did she have control over the medical care given to Rodriguez. Therefore, Defendant has not raised a genuine issue of material fact regarding whether Hubbard-Pickett personally knew of an excessive risk to Rodriguez's health caused by the medical treatment he received.

The admissible evidence establishes that Hubbard-Pickett's involvement in this matter was limited to her role as a grievance responder. See Gates v. LeGrand, No. 3:16-cv-00321-MMD-CLB, 2020 WL 3867200, at *5 (D. Nev. Mar. 27, 2020) *report and recommendation adopted*, No. 3:16-cv-00321-MMD-CLB, 2020 WL 1890540 (D. Nev. Apr. 16,

2020) (where the defendant's only involvement in the allegedly unconstitutional conduct is the denial of administrative grievances or the failure to act, the defendant cannot be liable under § 1983). Thus, Defendant did not violate Rodriguez's constitutional rights. Therefore, the Court grants summary judgment for Defendant and against Plaintiff on the Eighth Amendment claim.

V. Conclusion

    Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (#36) is **GRANTED**;

    IT IS FURTHER ORDERED that Defendant's Motion to Dismiss (#26) is **DENIED as moot**;

    IT IS FINALLY ORDERED that the Clerk of the Court enter **JUDGMENT** for Defendant Monique Hubbard-Pickett and against plaintiff.

Dated this 2nd day of February, 2021.

                                                  _____
                                                  Kent J. Dawson
                                                  United States District Judge